UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

BETSY HILLIS,                        )
                                     )    Nos. 4:17-cv-35, 4:12-cr-5
Petitioner,                          )
                                     )    Judge Mattice
v.                                   )
                                     )    Magistrate Judge Lee
UNITED STATES OF AMERICA,            )
                                     )
Respondent.                          )

## MEMORANDUM OPINION

On July 24, 2017, federal inmate Betsy Hillis filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Crim Doc. 556]. Petitioner argues she was deprived of her right to effective assistance of counsel due to numerous purported failures of her attorneys, including failure to obtain evidence to support an alibi defense, failure to negotiate an acceptable plea, failure to challenge sentencing guidelines, and various failures on appeal. As ordered, the United States filed a response to Hillis's Motion [Doc. 10], to which she replied [Doc. 19]. She has also filed a Motion for Evidentiary Hearing [Doc. 21] and a Motion for Court Order [Doc. 23]. Having considered the pleadings and the record, along with the relevant law, the Court finds there is no need for an evidentiary hearing[1] and Petitioner's § 2255 motion [Doc. 1; Crim Doc. 556] will be **DENIED**. Because the Motion is ripe for review and the record conclusively establishes

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

that Petitioner is entitled to no relief, Petitioner's Motion for Evidentiary Hearing [Doc. 21] and Motion for Court Order [Doc. 23] will be **DENIED AS MOOT**.

## I.      BACKGROUND FACTS AND PROCEDURAL HISTORY

On November 27, 2012, a grand jury handed down a four-count Second Superseding Indictment, charging Petitioner Betsy Hillis with (i) conspiracy to manufacture and distribute 50 grams or more of methamphetamine and 500 grams or more of a substance containing methamphetamine; (ii) conspiracy to possess and distribute pseudoephedrine, knowing it would be used to manufacture methamphetamine; (iii) obstruction of an official proceeding; and (iv) making false statements. [Crim. Doc. 350].[2] The charged conspiracies took place between January 2008 and February 2012. [*Id.*]. On Defendant's motion, the Court severed the drug conspiracy charges of Counts One and Two from the false statement and obstruction offenses of Counts Three and Four. [Crim. Doc. 393 at 2].

At trial, the Government presented evidence that Petitioner purchased Sudafed and traded it for methamphetamine. [*See e.g.* Crim. Doc. 480 at 175-178, 207]. The Government's witnesses testified they cooked methamphetamine for their personal use, shared with friends or family, and traded it for supplies to make methamphetamine. [*Id.* at 59-60, 97-98, 112--13]. The Government introduced pharmacy logs of pseudoephedrine purchases associated with Hillis's driver's license and records of Hillis's debit card purchases. Some of Hillis's debit card purchases were made in close geographical and temporal proximity to the purchase of pseudoephedrine by her codefendants. [Crim. Doc.

---

[2] The Government incorrectly indicates Count Two of the Second Superseding Indictment was conspiracy to possess equipment for the manufacture of methamphetamine. [Doc. 10 at 2].

481 at 48-56]. The pseudoephedrine logs were admitted over Defendant's motion in limine [Crim. Doc. 419] and continuing objection. [Crim. Doc. 426; Crim. Doc. 479 at 33].

At the close of the Government's case in chief, defense counsel moved for a judgment of acquittal under Federal Rule of Civil Procedure 29 on three grounds. [Crim. Doc. 480 at 247-265]. First, he argued the Government had failed to prove that the substances involved in the case were the substances charged in the indictment—i.e., that there was "actual" methamphetamine, a mixture containing methamphetamine, and pseudoephedrine involved in the conspiracy. [*Id.*]. Counsel noted the Government did not call a laboratory expert to prove that the product of the conspiracy was methamphetamine and not some other powder substance.

Second, Hillis's attorney argued there was a variance between what was charged in the indictment—conspiracy to manufacture and distribute—and the proof the Government presented of Hillis's possession and personal use. [*Id.*]. Finally, he argued the Government had failed to prove the existence of a conspiracy whose goal was distribution as opposed to mere possession. [*Id.*]. Counsel argued that because the indictment charged Hillis with conspiracy to both distribute and manufacture methamphetamine, the charge had to be dismissed because there was no evidence from which a reasonable juror could find distribution. [*Id.*]. The Government argued this deficiency was not fatal to the indictment and could be cured by removing reference to distribution from the jury instructions and verdict. The Court heard argument on all of these issues but did not grant the motion at that time. [*Id.* at 264].

In its case in chief, the Government presented evidence that 10 or so purchases of pseudoephedrine were made with Hillis's bank card in a 28-month period. [*See* Crim. Doc. 465 at 17]. On direct examination, Hillis testified she had made those purchases for

herself due to life-long sinus and allergy issues. [*See id.* at 18]. The Government also presented pharmacy logs of purchases associated with Hillis's driver's license number. Petitioner testified that the purchases without corresponding bank records were not hers, because she always used her debit card to buy things. [*Id.*]. She also testified that in October 2000 she thought she lost her driver's license, so she got a new one with the same address, and then found her prior license a week or so later. [Crim. Doc. 465 at 20-21]. She renewed her license in March 2003 with a new address but kept one of her old licenses. [Crim. Doc. 481 at 28-29]. She testified she would sometimes give a license to her ex-boyfriend and co-defendant Jeremy Rigsby to hold onto when they went out. [*Id.*]. She further testified Rigsby gave the license to another co-defendant who used it to purchase Sudafed for the purpose of making methamphetamine. [*Id.* at 31].

At the close of the defense case, defense counsel renewed his Rule 29 motion for judgment of acquittal. [Crim. Doc. 481 at 77-90]. The Court granted the Motion in part and denied in part. [Crim. Doc. 507 at 5]. The Court found that lab-tested methamphetamine was not required to sustain a conviction for the manufacture of methamphetamine, rejecting the first ground for counsel's motion. [*Id.*]. Viewed in the light most favorable to the Government, the Court held that a reasonable juror could conclude Hillis voluntarily joined a conspiracy to manufacture methamphetamine, but that no reasonable juror could find that Hillis conspired to distribute methamphetamine. [*Id.* at 5-6]. The Court based this ruling on the absence of proof that Hillis had any knowledge that the methamphetamine was being distributed to anyone other than herself. [*Id.* at 6]. The Court found this ruling was not fatal to Count One of the Second Superseding Indictment, however. Instead, reference to distribution was removed from the language of the indictment and the following charges were sent to the jury: conspiracy

to manufacture methamphetamine, conspiracy to possess and distribute a precursor chemical to methamphetamine, and the lesser-included offense of Count Two, conspiracy to possess a precursor chemical to methamphetamine. [Crim. Doc. 433]. At the charge conference, Hillis's attorney made multiple objections to the jury instructions. [*See* Crim. Doc. 507].

On the fourth day of trial, a jury found Petitioner guilty of 1) conspiracy to manufacture 50 grams or more of actual methamphetamine or five hundred grams or more of a mixture containing methamphetamine and 2) conspiracy to possess and distribute a precursor chemical to methamphetamine. [Crim. Doc. 433].

The Court's Probation Office prepared a Presentence Investigation Report reflecting a minimum term of imprisonment of ten years pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A) and a guideline sentencing range of 151 months to 188 months. [Crim. Doc. 464 at ¶¶ 55-56]. Hillis objected to multiple factual and legal aspects of the PSR, specifically challenging the two-level enhancement for obstruction of justice. [Crim. Doc. 454]. Defendant also filed a Motion for Variance of Sentence [Crim. Doc. 455], arguing, *inter alia*, that she was a low-level, non-violent offender and that the Government had ignored Department of Justice policy by charging her with a large drug quantity in order to trigger a mandatory minimum sentence that was designed for high-level offenders.

Prior to sentencing, the United States Sentencing Guidelines were amended, reducing Hillis's guideline imprisonment range to 121 to 151 months. [Crim. Doc. 482 at 32-33]. At sentencing, the Court sustained an objection to the PSR based on the amended guidelines and also granted the motion for a downward variance, reducing the term of

Case 4:17-cv-00035-HSM-SKL   Document 28   Filed 09/14/20   Page 5 of 21   PageID #: 168

imprisonment by one month. [*Id.*]. [3] The Court imposed the mandatory minimum sentence of 120 months' imprisonment. [*Id.* at 51-52; Crim. Doc. 472]. Counts Three and Four were dismissed on the Government's motion. [Crim. Doc. 472; Crim. Doc. 482 at 54].

Hillis appealed, challenging the Government's admission of pharmacy records that identified her as the purchaser of pseudoephedrine and arguing the evidence against her was insufficient to support a conviction. [*See* Crim. Doc. 537 at 1]. The United States Court of Appeals for the Sixth Circuit affirmed her conviction, *United States v. Hillis*, 656 F. App'x 222 (6th Cir. 2016), and the Supreme Court of the United States denied Hillis's petition for a writ of certiorari on March 20, 2017, *Hillis v. United States*, 137 S. Ct. 1359 (2017). Hillis timely filed her instant Motion to Vacate on July 24, 2017 [Crim. Doc. 556]. The Government responded, as ordered by the Court. [Doc. 10]. Petitioner then filed a reply brief and affidavit, a motion for evidentiary hearing [Doc. 21], and a Motion for Court Order [Doc. 23], asking the Court to require the Government or the Clerk of Court to provide Petitioner with record excerpts and case law cited by the Government in its reply.

## II.    STANDARDS OF REVIEW

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*,

---

[3] The Government's brief states Defendant objected to the enhancement for obstruction of justice and the Court sustained the objection, resulting in a reduction in her guideline range from 151-188 months to 121-151 months. This is incorrect. The Court overruled Defendant's objection, finding a two-level enhancement for obstruction appropriate. [Doc. 482 at 23, 31-32]. The reduction in Defendant's advisory guideline range was due to an amendment to the United States Sentencing Guidelines. [*Id.* at 32-33].

442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

In a § 2255 action, "[a]n evidentiary hearing 'is required unless the record conclusively shows that the petitioner is entitled to no relief.'" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (*quoting Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)). Otherwise, "a district court may only forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (*quoting MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017)).

To establish that she has received ineffective assistance of counsel, a convicted defendant must satisfy the two-pronged test set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* holds that a petitioner cannot establish his counsel was ineffective unless he demonstrates that (1) counsel's performance was deficient, such that counsel did not render reasonably effective assistance as measured by prevailing professional norms; and (2) he was prejudiced by the deficiency, i.e., there is a reasonable probability that but for counsel's alleged acts or omissions, the results of the proceedings would have been different. *Id.* at 687-88, 694; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* test to § 2255 claims). The failure to satisfy either prong of *Strickland* requires dismissal of the claim and relieves the reviewing court of a duty to consider the other prong. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009); *see also Strickland*, 466 U.S. at 697. Finally, *Strickland* "requires the defendant to identify specific acts or omissions by

7

counsel that were 'outside the wide range of professionally competent assistance.'" *Carter v. Bogan*, 900 F.3d 754 (6th Cir. 2018) (*quoting Strickland*, 466 U.S. at 690).

In the context of an ineffective assistance of counsel claim, an evidentiary hearing is required unless (i) the record conclusively shows the petitioner is not entitled to relief on the grounds that her counsel rendered a deficient performance, and (ii) the record conclusively shows that any deficient performance could not have prejudiced petitioner's defense. *MacLloyd v. United States*, 684 F. App'x 555, 560, 562 (6th Cir. 2017).

## III. ANALYSIS

### A. Motion to Vacate

Petitioner says she was denied effective assistance of counsel because her lawyer (1) failed to prove she was at work when she was purportedly buying pseudoephedrine, (2) failed to negotiate an acceptable plea agreement, (3) failed to challenge the presentence report and minimize Petitioner's sentencing exposure, and (4) failed to present the strongest arguments in her favor on appeal. The Government opposes the motion and argues an evidentiary hearing is not necessary. The record before the Court conclusively establishes that Petitioner was not denied effective assistance of counsel on the grounds raised and the Motion to Vacate will be denied.

#### 1. Ground One—Failure to Prove Alibi Defense

For her first ground, Petitioner claims trial counsel was ineffective because he failed to obtain evidence to support Petitioner's alibi defense and present it at trial. [Doc. 1 at 4]. Petitioner says she was actually at work at times when the Government claims she was buying pseudoephedrine. [Doc. 17 at 1]. She claims, as she did at trial, that her driver's license was used without her consent to purchase pseudoephedrine. [Doc. 5 at 8]. Her alibi could have been established, she argues, because she was in the presence of

8

coworkers, using password-protected software, and performing work that could only have been done by someone with unique experience and knowledge of her duties. [*Id.*]. "[I]t would be much simpler," she argues, for someone to make a fake driver's license or steal her "extra driver's license." [*Id.* at 8]. But this simpler explanation was not available to the jury, because according to Hillis, her attorney "failed to inspire 'reasonable doubt' by suggesting someone made a 'fake license' and by failing to prove defendant was at work...." [*Id.* at 19]. She says the subpoenas he wrote were too general to elicit the information she needed to prove her alibi, and that she was told of the lack of detailed records only a week before trial. [Doc. 17 at 2].[4] She also faults her counsel for not calling any witnesses to testify, though she does not say who he could have called. [Doc. 5 at 19].

The Government submits the affidavit of her trial counsel in support of its response. [Doc. 10-1]. Counsel avers that he sent subpoenas to five former employers of Petitioner in an attempt to obtain records that would contradict the pseudoephedrine pharmacy logs offered by the Government as proof that Hillis purchased pseudoephedrine. [*Id.*]. One employer had no records to produce, one had only wage information, and another only had records prior to the start date of the conspiracy. [Doc. 10-1 at ¶ 5]. None of the records contradicted the Government's proof, so counsel relied on, *inter alia*, Hillis's testimony and the absence of other evidence placing her at the pharmacies in question. [*Id.*].

The record demonstrates Hillis's counsel did in fact investigate Hillis's claim that she was at work during some of the pseudoephedrine purchases associated with her license, but was unable to obtain the records necessary to support this claim. Assuming

---

[4] She also claims that her attorney's assistant failed to give him messages from Hillis and was subsequently fired. [Doc. 17 at 1-2]. It is not clear what impact this issue supposedly had on Hillis's case.

*arguendo* that he could have drafted the subpoenas with greater detail or specificity, his failure to do so does not fall outside the wide range of professionally competent assistance. Petitioner was entitled to reasonably effective assistance of counsel, not perfect representation.

Nor can Petitioner establish prejudice. Petitioner's fixation on her employment alibi ignores the reality of the remaining evidence against her. She admitted to purchasing pseudoephedrine with her bank card and multiple people testified she purchased pseudoephedrine and traded it for methamphetamine. The Government presented evidence that Petitioner made purchases with her bank card at the same time and in the same location that her codefendants bought pseudoephedrine for the manufacture of methamphetamine. [Crim. Doc. 481 at 48-56]. Moreover, Hillis does not say when she was at work or which purchases could have been disputed, if any. She does not say, for example, what days and hours she normally worked or for which employers. With respect to some of the subpoenas, it appears the information Hillis seeks does not exist. Hillis therefore cannot show a reasonable probability that the results of her trial would have been different if her counsel had pursued her employment information more quickly or more aggressively.

Petitioner also claims trial counsel failed to seek surveillance video of the dates in question, failed to subpoena any of the clerks who supposedly sold Sudafed to Hillis, failed to engage the services of a professional hand-writing analyst to prove the pharmacy logs, and failed to match transaction detail records to Hillis' bank records. [Doc. 17 at ¶ 11]. But counsel strategically highlighted each of these deficiencies in the Government's proof during trial and avers this decision was intentional. [Doc. 10-1 at ¶ 5]. He noted the Government's lack of surveillance video, lack of handwriting analysis, and lack of witness

10

identification of Hillis as a pseudoephedrine purchaser in his closing argument. [Doc. 507 at 58]. He also objected to the admission of the pseudoephedrine pharmacy logs and objected to the manner in which the Government cross-examined Hillis regarding the transactions. [Doc. 419; Doc. 481 at 48]. Indeed, the Government was made to identify for the jury which transactions were purportedly made with Hillis's debit card versus which were associated with her driver's license and paid for by other means. [Doc. 481 at 48-50, 56-57].

Finally, Hillis says trial counsel should have argued to the jury that someone created a fake driver's license with her name and license number on it and used it buy pseudoephedrine. [Doc. 5 at 8]. It is not difficult to imagine that such a wildly speculative argument might have called into question Hillis's credibility and ultimately disadvantaged her. She further argues her attorney should have made a "jurisdictional argument," but does not explain what that means. Petitioner has not shown that her counsel was ineffective with regard to investigating and presenting an alibi defense. Even if she could show that some of the purchases made with her driver's license were not hers, she admitted to others, and the Government presented testimonial evidence of her role in the conspiracy. She cannot show a reasonable probability that the result of her trial would have been different had her counsel established she was at her place of employment at some unspecified time.

2.    Ground Two—Failure to Negotiate Acceptable Plea Agreement

Petitioner next claims her counsel was ineffective because he failed to pursue an *Alford* plea, failed to explain and negotiate for application of the safety valve provision, and failed to explain how Hillis's conduct did or did not satisfy the elements of the charged offenses. [Doc. 1 at 5]. Hillis does not say how she was prejudiced by these deficiencies,

11

but presumably she means to suggest that but for counsel's ineffectiveness, she would have been offered and accepted a favorable plea. Hillis initially claimed "at no time" was she "offered any type of plea." [Doc. 17 at ¶ 3]. She did not renew this contention following the Government's submission of evidence that a plea offer was indeed made and would have included a two-level safety valve reduction.

A defendant has no constitutional right to a plea bargain, much less a specific type of plea bargain. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to a plea bargain."). However, if a favorable offer is made, the defendant's attorney must communicate that offer, "review the charges with the defendant, including a discussion of the elements necessary for the conviction, the evidence that may support those elements, and the sentencing exposure that the defendant faces." *MacLloyd*, 684 F. App'x at 560 (*quoting Lafler v. Cooper*, 566 U.S. 156 (2012)). "The failure of defense counsel to provide professional guidance to a defendant regarding his sentencing exposure prior to a plea may constitute deficient assistance." *Id.*

That is not what Hillis contends happened here. Rather, she says her attorney failed to negotiate an "acceptable plea agreement," telling her "she must either plead guilty (and admit to criminal conduct) or go to trial." [Doc. 5-1 at ¶¶ 4-5]. The record reflects those were in fact her options. She says she asked counsel why an *Alford* plea, "best interest plea," or "no contest plea" was not available to her and he told her either that such a plea was not possible or that only the prosecutor could make that offer. [*Id.* at 11; Doc. 17 at ¶ 13].[5] She believes, however, that she was a good candidate for an "*Alford*

---

[5] This conversation appears to have occurred after she was sentenced, as she indicates she was incarcerated when she learned of an *Alford* plea. [Doc. 17 at ¶ 13]. She was not remanded to custody until the conclusion of her sentencing hearing. [Doc. 430].

plea" due to her lack of criminal history and the characteristics of her co-defendants. The record does not establish whether there were negotiations for such a plea.[6] [*Id.* at 11].

An *Alford* plea is simply "a guilty plea entered by a defendant who either 1) maintains that he is innocent; or 2) without maintaining his innocence, 'is unwilling or unable to admit' that he committed 'acts constituting the crime.'" *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995) (*quoting North Carolina v. Alford*, 400 U.S. 25 (1970)). "An *Alford*-type guilty plea is a guilty plea in all material respects." *Id.* at 11. Her attorney's statement that Petitioner would have to plead guilty or go to trial would therefore have been accurate even had she been offered an *Alford*-type plea agreement. More obviously, defense counsel could not compel the Government to offer any specific plea agreement and Hillis was apparently unwilling to plead guilty.

There is, perhaps, some factual dispute as to whether Petitioner was offered a plea, but to the extent there is a genuine dispute, it is not material to the resolution of the motion to vacate. In her initial pleadings, Hillis contends she was not offered any plea at all. [Doc. 17 at ¶ 3]. In response, the Government presented the affidavits of her attorneys, Brian O'Shaughnessy and Peter Strianse.[7] Both aver they discussed the possibility of a plea agreement with her. O'Shaughnessy says he talked with Hillis about whether a plea agreement was appropriate in her case and that it was his "standard practice' to discuss the safety valve provision for defendants with no criminal history. [Doc. 10-2 at ¶¶ 5, 7]. Strianse avers that on April 18, 2013, an AUSA sent O'Shaughnessy an email outlining the

---

[6] Petitioner cites statements made by the Court at sentencing regarding whether there had been discussions between counsel. [Doc. 5 at 12]. The Court's lack of knowledge regarding plea negotiations does not imply that negotiations should have occurred.

[7] The record reflects Hillis was represented by Brian O'Shaughnessy beginning December 3, 2012 [Doc. 261], and that Peter Strianse was substituted as counsel on June 10, 2013 [Doc. 368].

terms and conditions of a proposed plea agreement, including a safety valve reduction, indicating Ms. Hillis would face 30 months or less of jail time. [Doc. 10-1 at 6]. This email does not appear in the record and Mr. O'Shaughnessy does not make a similar declaration.

Strianse's affidavit also includes an April 8, 2014 email from the AUSA setting out terms and conditions of a plea agreement proposal. [*Id.* at 10-1]. Per the proposal, the Government agreed to recommend the application of the safety valve exception, provided Hillis made a full admission of her involvement in the offense. [*Id.*]. The email chain includes a draft counterproposal by Strianse that Hillis apparently refused to authorize him to send. [*Id.* at 6, 10]. The email proposal contemplated an 18 to 24-month sentence. [*Id.* at 10]. Strianse says he advised Hillis to settle her case and reach a plea agreement. [*Id.* at 6].

In her reply, Hillis does not repeat her contention that she was never offered a plea, nor does she dispute the Government's account of events. Instead, she now says "the superceding [sic] indictment came on the heels of Betsy Hillis refusing to plead guilty; two (2) new charges were promised as retaliation if Ms. Hillis failed to plead guilty." [Doc. 19 at ¶ 6].[8] It is difficult to square this account with her initial claim that she was never offered any kind of plea. Consistent with Hillis's later version of events, the second superseding indictment adding new charges was returned on April 23, 2013, just five days after Strianse avers the Government made a plea proposal.

Regardless of her factual allegations, the stated basis for Hillis's motion is not that she was never offered a plea. Instead, she argues she was denied effective assistance of

_____

[8] Likewise, in her Motion for Evidentiary Hearing [Doc. 21], Hillis identifies the numerous factual disputes she believes must be resolved by the Court. Whether she was offered a plea agreement is not among them. [*Id.*].

counsel because her attorneys failed to procure an "acceptable" plea and may not have sought the specific type of plea Hillis desired, presumably one that did not require her to plead guilty. There is no dispute that such a plea was never offered to Petitioner. The inability to procure a plea offer that a client wants to accept is not constitutionally ineffective assistance of counsel.[9]

Hillis also claims counsel did not explain the elements of the offenses with which she was charged. In the context of evaluating a plea agreement, such an oversight could perhaps rise to the level of ineffective assistance. *See MacLloyd*, 684 F. App'x at 560. But she makes this allegation in the abstract, unconnected to the assessment of a plea agreement. Similarly, she does not explain how this prejudiced her or what she would have done differently if she had more information. To the extent Hillis contends her attorney may not have engaged in plea negotiations, she claims only a lack of knowledge as to whether those discussions occurred. [Doc. 5 at 11]. The record now reflects that counsel attempted to negotiate a plea agreement for Hillis.[10]

3. <u>Ground Three—Failure to Dispute Legal and Factual Errors in PSR</u>

For her third basis for relief, Hillis argues her attorney was ineffective at sentencing because he failed to dispute inaccurate information in the PSR, failed to challenge the inaccurate application of the facts to sentencing laws, failed to offer mitigation, failed to present an alternative sentencing option despite the existence of better options, failed to perfect the record for appellate review, and failed to challenge her sentence as in excess of the statutory maximum. [Doc. 1 at 7]. She claims counsel failed to tell her "that anything

---

[9] Importantly, Hillis does not argue or allege that her attorneys received a formal plea offer that was not communicated to her.

[10] The proposal included a two-level safety valve reduction, as did the Government's prior proposal. [Doc. 10-1 at 10].

in the PSR (which was not disputed) would become a stipulated fact for sentencing." [Doc. 17 at 2]. Hillis says her lawyer did not explain the sentencing to Hillis, including how the Court arrived at the sentencing guideline range. She says counsel "did not present any ideas on how he would mitigate sentencing" and failed to follow Federal Rule of Criminal Procedure 32 in some unspecified way. [Doc. 17 at ¶ 14].

Hillis's sentence was not driven by the Presentence Investigation Report or the United States Sentencing Guidelines, but by the mandatory minimum sentence provided by statute for the offenses she was convicted of committing. She does not identify even one factual error in the PSR or explain why she believes her guideline sentence range was improperly calculated. Contrary to Hillis's contention, her lawyer filed and extensively argued objections to the PSR, and moved for a downward variance. [Crim. Doc. 454; Crim Doc. 455; Crim. Doc. 482]. The PSR was revised in response to these objections, at least one objection was sustained by the Court, and a downward variance was granted at sentencing. Petitioner insists there were "better options" and that her counsel should have mitigated her sentence but does not explain what more he could have done.

Petitioner argues there are "checks and balances to aid a defendant when the jury has been misled by a clever presentation... making the defendant appear guilty." [Doc. 5 at 17]. She believes that "[m]erely giving someone something with which they create a crime does not mean you approve of or are even aware the crime will occur" and that "[n]owhere does the record reflect that the defendant manufactured or distributed any drugs." [Doc. 5 at 17]. Though couched as ineffectiveness of counsel, this argument is no more than Petitioner's continued insistence that her actions did not constitute a crime.

Finally, Petitioner observes that at sentencing, the Court asked whether there were any further objections to the PSR or anything else that needed to go in the record.

[Doc. 13]. Petitioner misinterprets these routine questions as suggesting her counsel missed an opportunity to advocate for her.

### 4. Ground Four—Representation on Appeal

For her fourth ground, Petitioner challenges her representation on appeal, but fails to identify any specific errors. She claims her lawyer abandoned her strongest argument on appeal, failed to correct trial errors, and failed to support his arguments with strong citation to authority on the request of a judge during oral argument. [Doc. 1 at 8]. Hillis does not identify the arguments or citations that should have been raised or errors that should have been corrected. *Strickland* "requires the defendant to identify specific acts or omissions by counsel that were 'outside the wide range of professionally competent assistance.'" *Carter v. Bogan*, 900 F.3d 754 (6th Cir. 2018) (*quoting Strickland*, 466 U.S. at 690). Hillis has not done this, leaving the Court with nothing further to review with respect to her appellate representation.

### 5. Miscellaneous Issues

Hillis raises dozens of other challenges to the competence of her counsel with little argument or explanation. She claims, *inter alia*, that her attorney(s) failed to challenge the indictment, failed to challenge a "defective" grand jury process, failed to challenge subject matter jurisdiction, failed to demand "guideline codes" from the probation office, failed to propose jury instructions, failed to ask for first offender treatment, and failed to challenge the Government's use of information provided by Hillis. She does not explain any of this. She does not say, for example, what was wrong with the grand jury process, why subject matter jurisdiction was lacking, or what information should have been challenged.

17

Again, the *Strickland* test requires a greater degree of specificity than this to overcome the "strong presumption" that the challenged conduct was professionally reasonable. Petitioner has not met this standard, even in light of her *pro se* status. She also says her counsel failed to "persist" in his arguments, failed to "strap down his argument with proper citation to authority," failed to "flesh out his argument" and so forth. [Doc. 20 at 4-5]. Such errors in tone and presentation are insufficient to establish ineffective assistance, even assuming they were errors at all.

Similarly, Petitioner makes a number of arguments that are factually incorrect or legally baseless. She claims her trial counsel failed to argue that no methamphetamine was recovered in the case and none was lab-tested. But her lawyer made and argued a motion for acquittal on this basis and emphasized the Government's lack of evidence in his closing argument. She says he failed "to raise safety valve," but the record reflects that his proposed settlement offer to the Government would have included the safety valve provision. She says counsel failed to object to the Court's striking the conspiracy to distribute from the jury instructions and the verdict form, resulting in a constructive amendment to the indictment.[11] Yet he made this precise argument at the close of the Government's proof.

She argues counsel "never disputed the guideline as calculated by the Office of Probation nor did he offer an alternative calculation to the Court." [Doc. 17 at 3]. But her attorney made multiple objections to the PSR and the Probation Office revised the PSR in response. At sentencing, he objected to the two-level enhancement for obstruction of

---

[11] Petitioner suggests she was charged with possession with intent to distribute, believing simple possession could thus have been a lesser-included offense sent to the jury. But the indictment does not charge possession or conspiracy to possess methamphetamine, it charges conspiracy to distribute and manufacture methamphetamine.

justice based on Hillis's statements to law enforcement and trial testimony. After hearing argument and testimony, the Court found that Hillis had lied about purchasing pseudoephedrine for the purpose of providing it to someone to manufacture methamphetamine. [Doc. 482 at 31-32]. The Court therefore found the enhancement for obstruction appropriate. [*Id.*].

For related reasons, Petitioner cannot show that her counsel was ineffective for failing to demonstrate her entitlement to the safety valve provision at sentencing.[12] "In general, if a defendant is convicted under 21 U.S.C. § 841(b)(1)(A), he faces a statutory mandatory minimum sentence of 120 months." *United States v. Barron*, 940 F.3d 903, 913 (6th Cir. 2019). To qualify for a safety valve reduction, the Defendant must meet five criteria, including: "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." U.S.S.G. § 5C1.2(a). This requires "an affirmative act by the defendant truthfully disclosing all information he possesses that concerns his offense or related offenses." *Barron*, 940 F.3d at 917 (*citing United States v. Adu*, 82 F.3d 119 (6th 1996)). "These requirements reflect the fact that the safety valve was intended to benefit only those defendants who truly cooperate." *Id.* (citation and internal punctuation omitted). The Court's finding that Petitioner was untruthful at trial resolves in the negative the question of whether she "truthfully provided to the Government all information and evidence" she had "concerning the offense" by the time of sentencing.

---

[12] She also says her lawyer failed to ask the Court for "first offender" treatment under 28 U.S.C. § 994(j), detailing the duties of the United States Sentencing Commission, or 18 U.S.C. § 3607, relating to "Special probation and expungement procedures for drug possessors." These provisions do not entitle her to different sentencing treatment.

19

*See* U.S.S.G. § 5C1.2(a). Petitioner cannot show a reasonable probability that her sentence would have been different had her lawyer raised the safety valve provision at sentencing.

### B.    Miscellaneous Motions

Where "the record conclusively shows that the petitioner is entitled to no relief," an evidentiary hearing is not required on a § 2255 motion. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Petitioner's Motion for Evidentiary Hearing [Doc. 21] does not identify factual disputes that preclude the Court from resolving her Motion without an evidentiary hearing. The record conclusively establishes that Petitioner was not denied effective assistance of counsel on the grounds stated, and the Motion for Evidentiary Hearing [Doc. 21] will be denied.

Petitioner also urges the Court to require the Government or the Clerk's Office to provide her with transcript excerpts and the legal authority cited in its brief. [Doc. 23]. Petitioner contends she is at a disadvantage in replying to the Government's brief, but she has already filed a reply. Petitioner was entitled to file one reply pursuant to the Court's Order [Doc. 2] and Local Rule 7.1, which provides only for an initial motion and brief, a response, and a reply by the moving party. E.D. Tenn. L.R. 7.1(a). Additional briefs and papers are not permitted without prior approval of the Court, which has not been requested. The Motion to Vacate [Doc. 1] has been fully briefed and is ripe for review. The Motion for Court Order [Doc. 23] will be denied as moot.

## IV.    CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. Petitioner must obtain a COA before she may appeal the denial of her § 2255 motion. 28 U.S.C.

§ 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

## V.       CONCLUSION

For the reasons stated herein, Petitioner has failed to establish any basis upon which § 2255 relief could be granted, and it is therefore **ORDERED** that her § 2255 motion [Doc. 1; Crim Doc. 556] is **DENIED**.

The Motion for Evidentiary Hearing [Doc. 21] and a Motion for Court Order [Doc. 23] are **DENIED AS MOOT**.

A certificate of appealability from the denial of Petitioner's § 2255 motion will be **DENIED**. A separate judgment will enter.

**SO ORDERED** this 14th day of September, 2020.


_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE